IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| **NASER AWADH and STACY AWADH,**<br><br>Plaintiffs,<br><br>vs.<br><br>**FARM BUREAU MUTUAL INSURANCE COMPANY,**<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:13CV145DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. On June 16, 2016, the court held a hearing on the motion. At the hearing, Plaintiffs were represented by Matthew G. Wadsworth and Jacob Cowdin, and Defendant was represented by Paul M. Belnap. The court has carefully considered the materials submitted by the parties, as well as the facts and law relevant to the motion. Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

This case involves a dispute over insurance benefits that Plaintiffs claim are owed under their homeowner's insurance policy for a skid loader that went missing from their property on or about April 22, 2009. Farm Bureau issued homeowners' insurance coverage to the Awadhs during the relevant policy period of June 4, 2008, through June 4, 2009. The Policy stated, "We cover direct physical loss to or of covered property 'caused by' theft, attempted theft and loss of property from a known location when it is likely that the property has been stolen."

On or about April 22, 2009, Plaintiffs made a claim with Farm Bureau for the loss of the skid loader. Farm Bureau assigned Terry Fairman, a senior claim field representative, to handle the claim. Fairman took a recorded statement from Naser Awadh. Awadh informed Fairman that the skid loader had been missing for more than two years and that he had filed a report with the local sheriff. Awadh also informed Fairman that he had originally purchased the skid loader for his company.

Farm Bureau requested a copy of the sheriff's report and sent Plaintiffs a theft loss statement to complete. Awadh completed the theft loss statement and indicated that he had informed the sheriff's office that he had previously rented the skid loader to James Montalvo, who he suspected of taking the machine. Fairman again contacted Awadh and confirmed that Awadh had rented the skid loader to Montalvo.

Plaintiffs' homeowners' policy, which is intended to cover mainly household personal property, provides a $2500 limit of insurance coverage for property on the residential premises "used primarily for any business purpose." Based on the information Farm Bureau had regarding the skid loader, Farm Bureau determined that the skid loader was business property and tendered the $2500 business property limit to Plaintiffs. However, Plaintiffs refused that tender, claiming the skid loader was personal, not business, property.

Because of Plaintiffs' refusal to accept the $2500 payment, Farm Bureau continued its investigation and assigned Paul Cully to investigate the claim. Cully contacted the investigating officer at the Weber County Sheriff's Office and learned that the office had cancelled its investigation into the alleged theft based on its determination that no criminal theft occurred. The sheriff's office concluded it was a civil dispute between Awadh and James Montalvo. The officer informed Cully that the parties had agreed that Montalvo would purchase the skid loader

from Plaintiffs and the payments had been made. Cully then spoke to Montalvo, who stated that he and Awadh were in a dispute over the payments relating to the sale of the skid loader and that he took the skid loader upon the advice of counsel because it was his position that he had paid for the skid loader in full.

Based on Cully's investigation, Farm Bureau concluded that there was no coverage for the loss of the skid loader because it had not been stolen, but was repossessed as part of a civil dispute. Farm Bureau then engaged the law firm of Christensen & Jensen to review the claim. As part of its review, Christensen & Jensen learned that Awadh had filed a civil suit against Montalvo arising out of his repossession of the skid loader. Christensen & Jensen obtained pleadings and records filed as part of the civil lawsuit between Awadh and Montalvo. The records included a copy of a $13,000 cashier's check Montalvo paid to Awadh and a document purporting to be a bill of sale.

Based on this information, Christensen & Jensen consulted with Farm Bureau and sent a letter denying coverage for Plaintiffs' claim on the basis that the skid loader had not been stolen and, therefore, was not covered under the policy. As part of the denial, Farm Bureau reserved all of its rights under the Policy, including the right to continue its investigation based on any additional information. Farm Bureau encouraged Plaintiffs' counsel to provide any additional information or documents relating to the coverage issues.

Plaintiffs, however, initiated this action, alleging claims for breach of contract and a bad faith breach of the implied covenant of good faith and fair dealing. Plaintiffs allege that Farm Bureau breached the Policy terms indicating that it would provide coverage for "loss to or of covered property caused by theft, attempted theft, and loss of property from a known location when it is likely that the property has been stolen." Compl. ¶ 36, Ex. 2. Plaintiffs further allege

3

that Farm Bureau acted in bad faith in failing to fully and fairly investigate the claim in a timely manner and concluding that there was insufficient evidence that a theft had or likely had occurred. *Id.* ¶¶ 51-52, 60-61. As a result of the alleged breach, Plaintiffs claim that they have "been deprived of business projects because the absence of the Skid Loader inhibits the projects they can accept." *Id.* ¶¶ 42, 66. Awadh testified that if he was still in possession of the skid loader, he would have accepted various business projects that involved the machine.

During discovery in this case, Awadh testified in his deposition that he purchased the skid loader with money from a personal account, although he did not have any information regarding that account. Awadh also testified that after 2007 the skid loader belonged to him personally and he talked to someone at Farm Bureau at that time about whether he needed to have special insurance to have the skid loader at his house. He claims that his agent told him that he put it on his home insurance. Awadh could not name his agent and had no notes of the conversation, but he stated that his homeowner's insurance indicated that the skid loader was under his homeowner's insurance and indicated an email referencing it. However, the email was sent in 2011 and involved a different skid loader than the one that went missing in 2009.

## DISCUSSION

### Defendant's Motion for Summary Judgment

Farm Bureau moves for summary judgment, arguing that Plaintiff's bad faith and breach of contract claims both fail as a matter of law. Plaintiffs, however, assert that there are questions of fact as to whether the skid loader was stolen and whether it was business or personal property which preclude summary judgment.

A. **Bad Faith Claim**

Farm Bureau argues that Plaintiffs' bad faith claim fails because whether the skid loader

was stolen was fairly debatable and, thus, not actionable as bad faith under Utah law. "A federal court sitting in diversity applies the substantive law . . . of the forum state." *Signature Dev. Co. v. Royal Ins. Co.*, 230 F.3d 1215, 1218 (10th Cir. 2000). Under Utah law, the denial of an insurance claim is reasonable, as a matter of law, if the insured's claim is fairly debatable. *Saleh v. Farmers Ins. Exch.*, 133 P.3d 428 (Utah 2006). Whether an insurance claim is "fairly debatable" under the facts of a case is a question of law. *Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 535 (Utah 2002). A claim is "fairly debatable" where there is evidence presented that creates a factual issue as to the claim's validity. *Id.*

Utah courts have held that reliance on expert reports or an investigating agency's report provides a good faith basis for an insurer's defense. *Id.* In this case, Farm Bureau's investigator spoke with the investigating officer at the Weber County Sheriff's Office, who informed him that they had dropped their investigation of the purported theft because they determined that the dispute was simply a civil issue between Awadh and Montalvo. Montalvo claimed that the parties had agreed to the purchase of the skid loader and that he had made the payments. The Farm Bureau investigator also interviewed Montalvo, who informed him that he had agreed to purchase the skid loader and a dispute between the parties arose over payment and the attachments that were to be included in the sale. Montalvo claimed that Awadh repossessed the skid loader as a result of the dispute and Montalvo took it back on the advice of counsel.

Farm Bureau gave the investigator's information to an independent law firm, Christensen & Jensen, to review. Christensen & Jensen also discovered that Awadh had initiated a civil lawsuit against Montalvo arising out of the dispute over the skid loader. The civil lawsuit involved a counterclaim against Awadh based on an alleged bill of sale and the copy of a cashier's check that Montalvo had paid to Awadh. Based on the Sheriff's determination not to

5

pursue the theft allegation, the civil lawsuit, and Farm Bureau's interview of Montalvo, Farm Bureau denied Awadh's claim on the basis that no theft had occurred.

Plaintiffs take issue with Farm Bureau relying on Montalvo's allegedly fraudulent statements and unsavory actions. However, there was evidence to support Montalvo's assertions, the Weber County Sheriff's office appeared to credit his assertions, and Farm Bureau relied on the Weber County Sheriff's office and the opinion of an independent law firm investigating the matter. The undisputed facts establish that at the time Farm Bureau made its coverage decision, there was significant evidence indicating that the skid loader had not been stolen, but had been repossessed by Montalvo, who claimed ownership of the machine.

In *Callioux v. Progressive Ins. Co.*, 745 P.2d 838 (Utah Ct. App. 1987), the insurer denied coverage for their insured's automobile based on an arson expert's determination that the loss was the result of arson. The insured was criminally charged with arson but found not guilty by a jury. The court, however, found as a matter of law that the insured could not have established a bad faith claim based on the denial because there was ample evidence to suggest the insured may have committed arson, even though he was ultimately found not guilty. *Id.* at 842.

In this case, there is ample evidence to support Farm Bureau's denial. Even if it is ultimately established that Montalvo stole the skid loader, there was evidence supporting Farm Bureau's decision at the time. Based on all the evidence Farm Bureau uncovered in its investigation, it was fairly debatable whether the skid loader was stolen and Farm Bureau acted reasonably in denying Plaintiffs' claim. Whether the skid loader was actually stolen is irrelevant to the present motion and Farm Bureau's fairly debatable defense. And, Plaintiffs' arguments that a fact finder would need to make findings about the intent of Farm Bureau's agents, representatives, and investigators misses the mark. Plaintiffs have failed to point to any evidence

6

that Farm Bureau's agents or representatives acted inappropriately. Because it was fairly debatable whether the skid loader was stolen, Farm Bureau's denial of Plaintiffs' claim on those grounds cannot be the basis for a bad faith claim. Therefore, the court dismisses Plaintiffs' bad faith claim.

**B. Breach of Contract Claim**

Farm Bureau also seeks summary judgment on Plaintiffs' breach of contract claim, arguing that the skid loader was business property and it complied with the terms of the insurance contract when it tendered the $2500 business property limit in response to Plaintiffs' claim. Plaintiffs contend, however, that the skid loader was personal property and there is sufficient evidence supporting their contention for the issue to be decided by a jury.

"[A]n insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts." *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993). If the language in a policy is clear and unambiguous "the policy language is construed according to its usual and ordinary meaning." *Id.* An insurer may "exclude from coverage certain losses by using language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided." *Alf*, 850 P.2d at 1275.

In this case, Plaintiffs' homeowner's policy provided a $2500 limit of insurance coverage for property on the residential premises "used primarily for any business purpose." The parties do not contend that this limit is ambiguous or unclear. Rather, the parties factually dispute whether the skid loader was used primarily for any business purpose.

Farm Bureau contends that the evidence clearly demonstrates that the skid loader was purchased by Plaintiffs' business and there is no evidence the skid loader was transferred from

Plaintiffs' business to Plaintiffs personally. In a recorded statement with Farm Bureau in connection with his claim, Awadh told Terry Fairman that he had originally purchased the skid loader for his company. In his deposition in this case, Awadh similarly testified that his company bought the skid loader in 2004. Although Awadh also testified in his deposition that he bought the skid loader with a personal bank account, he did not provide any information or records regarding the account and could not identify even the bank at which the account might have been.

In contradiction to his testimony that he bought the skid loader with a personal account, Awadh also testified that he later bought the skid loader from his company for one dollar. The point of buying a skid loader, worth several thousand dollars, for only one dollar would obviously be to document the change in ownership. But again, Awadh has no records or documentation of that transaction.

Plaintiffs argue that, at the time the skid loader went missing, they were using the skid loader as personal property for snow removal at their home. Plaintiffs contend that they had no business, licensed or otherwise, that the skid loader was attached to or used to benefit. It is undisputed, however, that Plaintiffs had used the skid loader for business purposes and rented it to Montalvo for substantial rental payments. In addition, Awadh testified that if he had the skid loader he would have rented it or used it for business purposes. Thus, Plaintiffs seek damages for lost business profits in this case.

Additionally, Plaintiffs assert that their Farm Bureau agent later represented to Awadh that a skid loader, similar to the one in this case, would be covered as household personal property. An email from Jaisha Richardson, a sales associate with Farm Bureau, indicates that a skid loader could have been covered as household personal property. However, the email in question was sent in November 2011, several years after the skid loader at issue in this case had

8

gone missing, and it involved a different skid loader. Farm Bureau does not dispute that a skid loader could be household personal property. However, those are not the facts of this case. Moreover, Ms. Richardson was not involved in a coverage investigation and did not have any information with respect to how the skid loader was being used. Although Plaintiffs contend that Farm Bureau should have concluded the same for the skid loader at issue in this case, the facts and circumstances are easily distinguishable.

Farm Bureau argues that Plaintiffs cannot merely claim to be using the skid loader as personal property at the time it was taken without any evidence to support such a claim. The undisputed evidence establishes that Awadh bought the skid loader for his business, used the skid loader for business purposes, rented the skid loader to Montalvo, and intended to use the skid loader for business purposes or to rent it in the future. Plaintiffs conveniently claim that the skid loader was business property, then private property when it was taken, and then intended to be used in the future as business property.

Contrary to Plaintiffs' assertion, the rental of the skid loader was more than a mere one-time business use. Montalvo paid Plaintiffs $17,000 in rental payments over seven months. Awadh testified that if Montalvo had paid $1,900 more, he would have continued leasing the skid loader on an indefinite, monthly basis. In this case, Plaintiffs seek $200,000 in future rental costs involving the machine. In addition, Awadh testified that if he had the skid loader he may have engaged in other business opportunities. Plaintiffs apparently contend that it does not matter how much past or future income they would have received from the skid loader, so long as it was not being used for profit at the moment it went missing. But it is undisputed that they rented the skid loader in the past and intended to rent it in the future or use it for their own business purposes.

9

Farm Bureau has actual record evidence to support its position that the skid loader was business property. Plaintiffs have only self-serving statements that the skid loader was personal property. Awadh asserts he initially bought it with a personal account, but he gives no information or records in relation to the account. Awadh testified that he bought the skid loader from his business for one dollar, but again there is no record or documentation of the sale that would be conducted solely for the purpose of changing ownership. Awadh further testified that, at the time the skid loader went missing, he had no business and he was using the skid loader for personal snow removal at his home. But, he claims damages for the loss of rental income from not having the skid loader. While there are several unsupported assertions supporting Plaintiffs position, there is actual evidence supporting Farm Bureau's position. At the summary judgment stage, Plaintiffs must do more than make unsupported, self-serving assertions. Even if there was a brief hiatus in which the skid loader was not rented out, the evidence demonstrates that the skid loader was "primarily" used for business purposes. The court concludes that no reasonable juror could conclude otherwise. Accordingly, the court concludes that there is no basis for Plaintiffs' breach of contract claim and Farm Bureau is entitled to summary judgment.

## CONCLUSION

Based on the above reasoning, Defendant's Motion for Summary Judgment is GRANTED. Because this order disposes of all the claims at issue in the case, the Clerk of Court is directed to enter judgment in favor of Defendant and close the case. Each party shall bear his, her and its own fees and costs.

DATED this 18th day of July, 2016.

DALE A. KIMBALL
United States District Judge